Nathan S. Morris (9431)
**EISENBERG CUTT KENDELL & OLSON**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
Facsimile: (801) 350-0065
nmorris@eckolaw.com

Zachary J. Weyher (10846)
**TRUE WEST LEGAL**
1953 South 1100 East, #521524
Salt Lake City, Utah 84152
 (801) 750-5425
weyherlaw@gmail.com

*Attorneys for Plaintiff Golda Barton and L.C., a minor child*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GOLDA BARTON, individually and as mother and guardian of L.C., a minor child; MICHAEL CAMERON, individually and as father of L.C.,<br><br>          Plaintiffs,<br>vs.<br><br>OFFICER FARIAS, in an individual and official capacity; CHIEF MIKE BROWN, in an official capacity as police chief of the Salt Lake City Police Department; SALT LAKE CITY CORPORATION; and DOE DEFENDANTS 1 THROUGH 10.<br><br>          Defendants. | **COMPLAINT<br>AND<br>JURY DEMAND**<br><br>Civil No. 2:20-cv-832<br><br>Magistrate Judge Dustin B. Pead |

1

Plaintiffs, by and through their counsel, hereby complain of defendants and allege as follows:

## PARTIES AND JURISDICTION

1. Golda Barton is a resident of Salt Lake City, Utah, and is the mother sole caretaker and guardian of L.C., a minor child, who is also a resident of Salt Lake City, Utah.

2. Michael Cameron is a resident of Idaho and is the natural father of L.C.

3. At all times relevant hereto, Salt Lake City Police Department ("SLCPD") officer who is believed to be Officer Farias (also "Defendant Farias"), whose first name is unknown, was an employee of Defendant Salt Lake City Corporation and an officer of SLCPD.

4. At all times relevant hereto, defendant Mike Brown ("Chief Brown" or "Defendant Brown") was an employee of the Salt Lake City Corporation and acting as Chief of Police of SLCPD.

5. At all times relevant hereto, Defendant Salt Lake City Corporation ("Salt Lake City") was a political subdivision of the State of Utah, as defined by U.C.A. § 63-30d-102(4)(a)(7), which employed Officer Farias and Chief Brown through the SLCPD.

6. Doe Defendants 1 through 10 ("Doe Defendants") are employees or representatives of the aforementioned Defendants who had or may have had involvement in the acts and omissions complained of herein, the names of whom

are currently unknown. Unless otherwise stated, the allegations contained in this Complaint apply to Doe Defendants even if they are not specifically named therein.

7. This action is brought for damages and other appropriate relief under 42 U.S.C.A. § 1983 for violation of L.C.'s federal civil rights by the Defendants, and therefore Plaintiffs' civil rights, including Amendments 4 and 14 of the Constitution of the United States, whose actions were taken under color of state law.

8. This action is also brought for damages and other appropriate relief under Art. I § 14 of the Utah Constitution which prohibits unreasonable searches and seizures.

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331.

## INTRODUCTORY ALLEGATIONS

10. On September 4, 2020, SLCPD Officer Farias shot 13-year-old L.C. eleven times.

11. L.C. has autism and Asperger's syndrome.

12. L.C. was at all times un-armed.

13. L.C. had not committed any crime at the time he was shot and was at no time being investigated for a crime or pursued by the police as a criminal.

14. At no time did L.C. threaten Officer Farias or any other officer with the use of force of any kind.

15. Immediately after the shooting, as he lay helpless and bleeding on the ground, L.C. told Officer Farias that he couldn't feel his left arm, yet Officer Farias forcibly pulled L.C.'s left arm out from under his body and handcuffed his arms

behind his back, then rolled him over onto his back, pinning his arms beneath him.

16. L.C. remained in handcuffs while Officer Farias and other officers attempted to treat his numerous gunshot wounds.

17. The officers on scene criticized Officer Farias for shooting L.C. but nevertheless left L.C. handcuffed with the full weight of his body pressing down on his arms that remained behind his back.

## **GENERAL ALLEGATIONS**

18. Prior to the shooting, L.C.'s mother, Golda Barton, had called 911 to request a Crisis Intervention Team (CIT) who could help take L.C., who has autism, to Primary Children's Hospital.

19. Ms. Barton informed the 911 responder that she needs a "mental health worker, because he's sick."

20. Thereafter, Officer Farias and at least 3 other SLCPD officers responded to the 911 call and spoke with Ms. Barton at approximately 500 South and 1300 West, Salt Lake City, Utah.

21. The responding officers knew or should have known from the dispatch that L.C. was autistic and had mental health concerns and that the call was related to L.C.'s mental health condition.

22. These SLCPD officers were not trained as mental health workers.

23. These SLCPD officers were not trained as crisis intervention team officers.

24. These officers were not certified in Sensory Inclusive Training which is designed to handle foreseeable situations involving people with disabilities like autism.

25. These SLCPD officers did not receive adequate de-escalation training.

26. On the night of the incident, L.C. was located at Ms. Barton's home located at 1269 West 500 South, Salt Lake City, Utah.

27. When speaking with Ms. Barton, the interviewing officer confirmed that L.C. was "having a little bit of separation anxiety" and that he was "having a bit of an episode."

28. Ms. Barton also informed the officers, including Officer Farias, that L.C. has a "sensory disorder."

29. Ms. Barton also informed the officers, including Officer Farias, that L.C. was afraid of law enforcement officers and would run away from them.

30. While Ms. Barton was being interviewed, Officer Farias and another SLCPD officer discussed the situation and they were unable to recall whether the policy even permitted them to approach L.C. under the circumstances.

31. The officer speaking with Officer Farias told him: "If this is a psych issue, I don't see why we should even approach."

32. She also recommended that "we should call sergeant, because I'm not about to get in a shooting because he's upset."

33. Officer Farias agreed and stated: "Especially when he hates cops, it's going to end in a shooting."

34. Despite these voiced concerns, at no time did the officers call a sergeant or seek guidance.

35. Rather, the officers, including Officer Farias, descended on L.C.'s home with their guns drawn.

36. After the officers knocked on the door, L.C. escaped out the back door and ran away.

37. L.C. ran west down an alley and confronted one officer, whose body camera clearly showed L.C.'s bare, empty hands, clearly indicating that L.C. was unarmed.

38. Unthreatened and seemingly unconcerned, the officer told L.C. to "knock it off."

39. Linden instead turned around and ran the other way down the alley.

40. In an attempt to give chase, Officer Farias kicked through a wooden fence, gun already drawn, and began chasing L.C. as he passed by the fence.

41. Officer Farias' gun is believed to be a Glock 17.

42. Officer Farias sprinted past at least 2 other officers in order to run L.C. down.

43. Less than 30 seconds after breaking the fence, Officer Farias was within 15-20 feet of L.C., who was no longer running.

44. Officer Farias was shining a light on L.C. and it was evident that L.C. did not possess any weapon in his hands.

45. At no time did Officer Farias or any other officer tell L.C. that he was under arrest or otherwise charged with violating the law.

46. L.C. did not threaten Officer Farias with physical force or any violence.

47. At all times Officer Farias was also armed with a Taser.

48. Officer Farias did not remove the Taser from his holster from the time the pursuit began until the time he shot L.C.

49. Indeed, at no time did Officer Farias attempt to use any intermediate weapons, such as impact weapons, aerosols, or conductive energy devices, such as his Taser.

50. Instead, Officer Farias used his gun, a Glock 17, to shoot L.C. 11 times.

51. Officer Farias' use of 11 bullets was a clear attempt to kill L.C.

52. As a result of the shooting, L.C. sustained serious and permanent injuries, including left arm paralysis, ankle injuries requiring surgery and hardware, internal organ damage, severe emotional and mental anguish and trauma, and other injuries.

53. L.C. still has several of Officer Farias' bullets inside his body.

54. Defendants' acts and omissions directly and proximately caused plaintiffs' injuries and damages, including, but not limited to, extreme pain and suffering, loss of enjoyment of life, past and future medical bills, loss of earning capacity, loss of consortium, and other compensatory damages.

55. Plaintiffs Golda Barton and Michael Cameron are the parents of their minor child, L.C., and therefore enjoy a legal relationship recognized by Utah Courts with respect to a loss of consortium claim.

56. L.C. has suffered a permanent disfigurement as a direct result of Defendants' constitutional violations as described herein.

57. As a result of LC.'s permanent injuries, Plaintiffs Golda Barton and Michael Cameron have suffered a loss of filial relationship, including their relational interest such as losses of L.C.'s company, society, cooperation, and affection.

58. Plaintiffs seek punitive damages as a result of Defendants' acts and omissions.

59. Plaintiffs seek allowable costs, interest, and attorneys' fees as a result of Defendants' acts and omissions.

## FIRST CLAIM FOR RELIEF

(Defendant Farias and Does 1-10 – Violation of 42 U.S.C.A. § 1983)
(Use of Excessive Force)

60. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

61. At all times relevant hereto, Defendant Farias and Does 1-10 were acting under color of state law, ordinance, custom, practice, and/or usage, and within the scope of their employment by defendant Salt Lake City Corporation.

62. By shooting L.C. even though he was not armed with a weapon of any kind, Officer Farias used force that was not reasonable under the circumstances, in violation of L.C.'s established constitutional rights as set forth by the United States Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985) and followed consistently by the 10th Circuit.

63. By shooting L.C. eleven times even though he did not present an immediate danger or impending threat of death or serious bodily injury to himself, the officers or others, Officer Farias used force that was not reasonable under the circumstances, in violation of L.C.'s established constitutional rights as set forth in numerous Tenth Circuit and other cases, including *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006); *Zuchel v. City & County of Denver*, 997 F.2d 730 (10th Cir. 1993).

64. Officer Farias' and Does 1-10's deliberate and reckless conduct and actions leading up to the moment of the shooting (when they knew that L.C. was autistic and had mental health concerns and that he was fearful of law enforcement) were not reasonable under the circumstances and directly led to and created the subsequent unlawful use of lethal force in violation of L.C.'s established constitutional rights as set forth in *Estate of Ceballos v. Husk,* 919 F.3d 1204 (10th Cir. 2019); *Sevier v. City of* Lawrence, 60 F.3d 695 (10th Cir. 1995); and *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997).

65. Doe Defendants and Officer Farias deliberately de-activated the audio on their body-worn cameras during critical and active times during the events alleged herein.

66. No supervisor was on the scene or called to the scene to help develop a plan to safely deliver L.C. to a mental health facility.

67. Defendants and Officer Farias engaged in unnecessary, overly aggressive behavior that created, contributed to, or escalated the situation.

68. The failure to use de-escalation tactics, such as establishing a rapport with L.C. or using other communicative methods to engage him, Doe Defendants and Officer Farias took actions or inactions that caused or contributed to the violation of L.C.'s established constitutional rights.

69. By failing to intercede or intervene in order to prevent the foot pursuit and/or to prevent the unlawful shooting, Defendant Does 1-10 took actions and inactions that caused or contributed to the violation of L.C.'s established constitutional rights.

70. The SLCPD officers knew or should have known that there was no risk of injury or harm to themselves or the general public if they did not shoot L.C.

71. Because L.C. had not committed any crime, the risk and reasonably foreseeable consequences of escape did not justify a pursuit and use of lethal force.

72. Rather than utilize other less-deadly means of detaining L.C., including the use of a Taser, Officer Farias defaulted to his pistol to effect deadly force, in violation of L.C.'s established constitutional rights.

73. Once he began firing his gun at L.C., Officer Farias did not intend to bring L.C. into custody alive.

74. Officer Farias' initiation of lethal and deadly force against L.C. was unreasonable, excessive and unnecessary and violated his clearly established right to be free

from unreasonable seizures under the Fourth Amendment to the United States Constitution and his due process rights under the Fourteenth Amendment to the United States Constitution.

75. Pursuant to 42 U.S.C.A. § 1983, Plaintiffs are entitled to recover from and against defendants all damages sustained by the Plaintiffs as a direct and proximate result of defendants' violation of L.C.'s constitutional rights, including, without limitation, the damages described herein and attorneys' fees.

## SECOND CLAIM FOR RELIEF

(Defendants Farias Does 1-10 – Violation of 42 U.S.C.A. § 1983)
(Continued Use of Excessive Force)

76. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

77. Officer Farias further violated L.C.'s clearly established rights by continuing to use deadly force and unnecessary force *after* L.C. had fallen to the ground as a result of his gunshot wounds inflicted by Officer Farias, as set forth in *Fancher v. Barrientos,* 723 F.3d 1191, 1201 (10th Cir. 2013); *Parea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016); *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018); *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1176 (10th Cir. 2020), and other cases.

78. Officer Farias knew or should have known that after disabling and subduing L.C. with the initial bullets, he was rendered physically incapable of violence and he did not pose a threat of escape to the officers.

79. Officer Farias' acts of shooting L.C. with eleven bullets, several of which were fired after he had fallen to the ground, and when L.C. did not pose a threat of escape were intentional, willful, wanton, obdurate, and in gross and reckless disregard of L.C.'s clearly established rights, and were taken with deliberate indifference to his rights.

80. Officer Farias and Does 1-10 further violated L.C.'s established constitutional rights as set forth in *Graham v. Connor*, 490 U.S. 386 (1989), by placing him in handcuffs and rolling him over onto his disabled arm in a manner to cause further pain and suffering, and by forcing him to remain in handcuffs, despite L.C.'s statement that he could not feel his arm,

81. Defendants' continued use of force after L.C. had been shot to the ground violated clearly established law and directly and proximately caused plaintiffs' injuries and damages.

82. Pursuant to 42 U.S.C.A. § 1983, Plaintiffs are entitled to recover from and against defendants all damages sustained by the Plaintiffs as a direct and proximate result of defendants' violation of L.C.'s constitutional rights, including, without limitation, the damages described herein, exacerbations of injuries, and attorneys' fees.

**THIRD CLAIM FOR RELIEF**

(Defendant Brown and Defendant Salt Lake City Corporation, and Doe Defendants 1 - 10 – Violation of 42 U.S.C.A. § 1983)

83. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

84. Defendant Brown and/or Defendant Salt Lake City Corporation and/or SLCPD (herein "City Defendants") have separate and independent duties to train and instruct officers and employees regarding acceptable policing practices and procedures, including being aware of and apprising officers of updates, changes, or other requirements relating to the use of deadly force on a fleeing suspect.

85. Defendant Brown, on behalf of Salt Lake City, is charged with overseeing the training program and is directly involved in the creation and implementation of SLCPD policies and procedures.

86. Just months earlier, the City Defendants had been involved in a shooting of a fleeing suspect and were aware of criticisms to SLCPD policies and procedures and requested revisions to said policies and procedures.

87. Upon information and belief, City Defendants failed to conduct sufficient training to ensure that SLCP officers are trained regarding whether to use lethal force against a person who is running away and the amount of lethal force to use when firing, including a purported "shoot twice and assess" policy that had previously been ignored or disregarded by SLCPD officers.

88. The City Defendants were deliberately indifferent to the inadequacy of its police training program with respect to officers' interactions and use of force on fleeing citizens and on persons with physical and emotional or invisible disabilities

("disabled person"), such as L.C. as set forth in *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) and *Ceballos v. Husk,* 919 F.3d 1204 (10th Cir. 2019).

89. Officer Farias and other officers admitted that they were unsure of the policies and procedures when they were in the process of apprehending L.C.

90. The situation faced by the responding officers, particularly assisting in responding to a call about a "disabled person," such as L.C., is a usual and recurring situation with which SLCPD officers must deal.

91. The City Defendants failure to train SLCPD officers on how to appropriately deal with mentally ill and emotionally upset citizens demonstrates a deliberate indifference towards individuals such as L.C.

92. City Defendant's inadequate training was directly linked to Officer Farias' unconstitutional use of excessive force against L.C. as set forth in *Zuchel v. City and County of Denver, Colo.*, 997 F.2d 730 (10th Cir. 1993).

93. City Defendants failed to address the aforementioned case law to ensure that its officers were instructed and trained and/or retrained regarding a disabled person or other citizen's right to be free from excessive use of lethal force, including excessive force once any threat has been subdued or incapacitated.

94. On information and belief, prior to and during the investigative process, Chief Brown and other SLCPD policy makers have acted in ways that are inconsistent with ensuring that citizens remain free from gratuitous violence and excessive

force, and have instead ratified and enabled unlawful behavior by officers of the SLCPD.

95. The City Defendants failed to properly instruct, train and re-train its police officers on the proper use of firearms, including standard policies and practices that instruct officers to "shoot twice and reassess." Contrary to this directive, the Defendant Farias's actions in shooting 11 times demonstrates an intention to "shoot to kill."

96. On information and belief, the City Defendants failed to train its police officers on such fundamentals as de-escalation training, proper use of a lethal firearm to apprehend a fleeing person, and the choice between use of lethal weapons versus the use of more conservative modes of apprehending and subduing a fleeing suspect.

97. Based on the body-worn camera videos of Officer Farias and the other SLCPD officers, the City Defendants had authorized, encouraged, or otherwise permitted its officers to shoot until the fleeing suspect is dead.

98. On information and belief, City Defendants failed to adequately investigate, discipline and/or otherwise address previous shooting incidents by SLCPD officers, thereby causing and contributing to the officers' unlawful shooting of L.C.

99. On information and belief, the City Defendants encouraged, developed, pursued, or permitted policies, practices, and customs, either formal or informal, which

caused and permitted police officers to use unreasonable and unnecessary force in apprehending citizens. Such conduct includes, but is not limited to, establishing a policy or practice of protecting police officers who violate the constitutional rights of individuals by failing to discipline, reprimand, teach, or discharge police officers.

100. Upon information and belief, such conduct by City Defendants permitted, encouraged, and caused Officer Farias to act as described above with knowledge, understanding, or belief that his conduct would not cause him to be reprimanded, disciplined, or discharged.

101. Upon information and belief, City Defendants have knowingly and intentionally failed to adequately hire, train, educate, monitor, and/or supervise, or have been deliberately indifferent, reckless, or grossly negligent in hiring, training, educating, monitoring, and/or supervising, its police officers, including, without limitation, Defendant Farias.

102. Upon information and belief, Chief Brown and the SLCPD failed to timely enact changes to the Salt Lake City Police Department Policy Manual and train officers on those changes as ordered by Salt Lake City Mayor Erin Mendenhall on August 3, 2020.

103. If implemented and followed, the August 3, 2020 changes ordered by Mayor Mendenhall would likely have prevented the shooting of L.C.

104. SLCPD failed to properly supervise Officer Farias and the other officers despite knowing that four or more of its officers were responding to a scene involving a mentally disabled juvenile.

105. The above-described misconduct by the City Defendants caused L.C. to be subjected to violations of clearly established constitutional rights under the Fourth and/or Fourteenth Amendment(s) to the United States Constitution, and has encouraged other police officers to engage in similar violations of constitutional rights.

106. The above-described misconduct of City Defendants directly and proximately caused Plaintiffs' injuries and damages.

107. Pursuant to 42 U.S.C.A. § 1983, Plaintiff is entitled to recover from and against City Defendants all damages sustained by Plaintiffs as a direct and proximate result of City Defendants' violation of L.C.'s constitutional rights, including, without limitation, the damages described herein and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

(All Defendants – Violation of Art. I § 14 of the Utah Constitution)

108. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

109. For the reasons set forth above, Defendants have also violated L.C.'s rights to be free from excessive force and unreasonable searches and seizures as those rights are guaranteed by Article I, Sections 4 and 14 of the Utah Constitution.

110. Defendant Farias' use of force and continued use of force after L.C. had been shot to the ground (as set forth in the First and Second Causes of Action) violated his established rights under the Utah Constitution and directly and proximately caused L.C.'s injuries and plaintiffs' damages.

111. The City Defendant's actions, omissions and ratifications (as set forth in the Third Cause of Action) violated L.C.'s established rights under the Utah Constitution and directly and proximately caused L.C.'s injuries and plaintiffs' damages. Plaintiffs are entitled to recover from and against Defendants all damages sustained by L.C. and plaintiffs as a direct and proximate result of Defendants' violations of L.C.'s rights under the Utah Constitution, including, without limitation, the damages described herein and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

(All Defendants – Violation of Art. I § 9 of the Utah Constitution)

112. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

113. For the reasons set forth above, Defendants have also violated L.C.'s rights to be free from unnecessary rigor as that right is guaranteed by Article I, Section 9 of the Utah Constitution.

114. Defendant Farias's actions of shooting L.C. after he was effectively imprisoned and violated L.C.'s constitutional rights and subjected him to needlessly harsh, degrading, and dehumanizing treatment at the hands of the Defendants.

115. Defendants knowingly and intentionally violated L.C.'s constitutional rights by subjecting him to unjustified shootings and unnecessarily and unreasonably placing him in handcuffs despite his complaints.

116. At all times, Officer Farias and the other officers acted under color of their authority as police officers of the SLCPD when they deprived L.C. of his rights to be free from unnecessary rigor under Article I section 9 of the Utah Constitution.

117. As a result of Defendants' violations of L.C.'s rights under Utah's Constitution, L.C. and his family sustained physical, mental and emotional injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For economic damages in an amount to be determined at trial;

2. For non-economic damages in an amount to be determined at trial;

3. For consequential and other compensatory damages in an amount to be determined at trial;

4. For punitive damages in an amount to be determined at trial;

5. For an award of attorney's fees and costs incurred herein pursuant to 42 U.S.C.A. § 1988, or as otherwise provided by law; and

6. For such other and further relief as the Court deems proper, including, without limitation, pre- and post-judgment interest.

## DEMAND FOR JURY

Plaintiffs hereby demand a trial by jury on all claims.

Dated this 23rd day of November, 2020.

                                    **EISENBERG CUTT KENDELL & OLSON**

                                    */s/ Nathan S. Morris*
                                    Nathan S. Morris,
                                    Attorneys for Plaintiff